## HUBBARD *v.* INVESTMENT COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

Argued December 17, 20, 1886. — Decided January 17, 1887.

On the facts in this case as stated in the opinion of the court, *Held,* That there was no error in the instruction of the court below to the jury to find a verdict for the defendant.

This was an action at law. The case is stated in the opinion of the court.

*Mr. Robert Dickson Smith* and *Mr. William Warren Vaughan* for plaintiff in error.

*Mr. Hugh Porter* for defendant in error.

Mr. Justice Matthews delivered the opinion of the court.

This is an action at law brought by the plaintiff in error, a citizen of Massachusetts, against the defendant in error, in the Supreme Judicial Court of that state for the county of Suffolk, and removed by the defendant, a corporation and citizen of the state of Illinois, into the Circuit Court of the United States for that district. The New York, New England and Western Investment Company is a corporation chartered by the state of Illinois under the name of the Edgar County Land and Loan Company, its name having been subsequently changed. It has an authorized capital stock of $100,000, subject to be increased to $200,000. Its powers were conferred by the third section of an act approved March 8, 1867, which reads as follows:

" Section 3. The said corporation shall have power to borrow money and to receive money in deposit and pay interest thereon, and to loan money within or without this state at any rate of interest not exceeding that now or hereafter allowed by law to private individuals, and to discount loans,

and in computation of time thirty days shall be a month and twelve months a year, and to make such loan payable either within or without this state, and to take such securities therefor, real and personal, or both, as the directors and managers of said corporation shall deem sufficient, and may secure the payment of such loans by deeds of trust, mortgages, or other securities, either within or without this state ; may buy and sell negotiable paper or other securities ; may open and establish a real estate agency ; may purchase and sell real estate, and shall have power to convey the same in any mode prescribed by the by-laws of such corporation ; may accept and execute all such trusts, whether fiduciary or otherwise, as shall or may be committed to it by any person or persons, or by order of any court or tribunal or legally constituted authority of the state of Illinois, or of the United States, or elsewhere ; may make such special regulations in reference to trust funds, or deposits left for accumulation or safe-keeping, as shall be agreed upon with the depositors or parties interested, for the purpose of accumulating or increasing the same ; may issue letters of credit and other commercial obligations, not, however, to circulate as money, and may secure the payment of any loan made to said company in any way the directors may prescribe."

The home office of the company was at Chicago, but a branch was established in New York City, which became, and was at the time of the transactions in question in this suit, the main office at which its business was chiefly transacted. The company also directed the establishment of branch offices at Philadelphia and Boston. The relation between the defendant and the plaintiff grew out of a contract entered into between them, having in view the establishment of the office in Boston. A contract in writing was entered into between them on the 17th day of December, 1879, the substantial parts of which are as follows : The plaintiff, Hubbard, agreed "to open and take charge of a branch office of said corporation at Boston, Mass. ; to devote his best energies and time to the interests of said corporation, as far as may not be inconsistent with a due regard for the interests of such legal clients

as he may have from time to time, always considering his duties towards said corporation as of the utmost importance; to use his best endeavors to place in New England, where it may be of greatest advantage to said corporation, twenty-five thousand dollars ($25,000) of the capital stock of said party of the first part, and generally to do and perform, (within his 'division,' so called,) all acts for the furtherance of the interests of said party of the first part as shall be consistent with honor, honesty, equity, and fair dealing."

On its part, the defendant agreed "forthwith to elect said party of the second part one of its directors, with the title of assistant vice-president; to give said party of the second part the direction of said office designated as the Eastern Division, subject, of course, to the by-laws of said corporation now in force or hereafter to be enacted; to furnish said office and its furniture, all the books, signs, circulars, and advertising, which said corporation may require; to pay the salary of its book-keeper, and of such other employés as may be deemed necessary and proper, and generally to pay the running expenses of said office; to pay to said party of the second part the sum of eighteen hundred dollars ($1800) per year as 'salary,' together with all expenses of travel incurred by him on its behalf, and a further amount, as 'commissions,' to be determined as follows, to wit: All business originating in said 'Eastern Division,' which shall include the whole of Maine, New Hampshire, Vermont, and Massachusetts, or transacted at said Boston office, shall be 'valued' according to the amount of gross profit coming therefrom to said corporation, or which can be rightfully claimed by it. After deducting from the aggregate of such profits for each year the sum of fifty-four hundred dollars ($5400), plus the amount of book-keeper's salary, said party of the second part shall be entitled to one-third of the balance as commissions, as above. Settlement shall be made between said parties as often as once a month, said party of the second part becoming entitled to said 'commissions' *pro rata* as soon as the same shall have been earned and received, and shall exceed in the aggregate the amount of $5400, plus salary of book-keeper, as above set forth, and shall be paid 'in kind.'

"Said party of the first part shall favor as much as practicable said Boston office, to the end that parties within its precincts may deal directly with it. All legal services required by said party of the first part, for itself or others, in suits or proceedings in court, or in the drawing of railroad deeds and mortgages, shall be entitled to extra compensation from said party of the first part."

It was also provided, that "this agreement shall go into effect from and after the sale or purchase by said party of the second part at par of ten thousand dollars ($10,000) of the capital stock of said party of the first part and payment therefor, and shall be in force for one year, at the end of which time there shall be a general accounting together of said parties, and a new agreement may be made and entered into, if the mutual interests of said parties may so require."

This agreement went into effect, according to its terms, by the plaintiff taking and paying for $10,000 of its capital stock at par on the 24th of December, 1879. On the 5th of June, 1880, he was elected a director by the stockholders at their annual meeting in Chicago. The plaintiff opened in Boston the branch office contemplated, and performed all the services required of him during the year fixed by his contract; was paid his salary of $1800, and reimbursed for all outlays, as provided in the contract of December 17, 1879, rendering monthly accounts to the New York office, as required, to which no objection was ever made; and, apart from the transaction here in question, there was no controversy as to his interest in any part of the gross profits arising under the contract.

It also appeared from the evidence — the whole of which is set out in the bill of exceptions — that, through a contract with the Kansas City, Burlington, and Santa Fé Railway Company, of which W. H. Schofield was then president, the defendant had for sale certain bonds of that company, and, in order to place them before other railroads and investors, it had issued a circular, dated May 15, 1880, offering for sale these bonds, which were to cover not only the extension of that road to Burlington, Kansas, but also that portion of the

road already built from Ottawa to Burlington, and on this completed portion of the road of forty-five miles there was already outstanding $600,000 of first mortgage bonds, which were to be taken up and cancelled from the proceeds of the new bonds offered in this circular. One of these circulars was sent from the New York office to the plaintiff at the Boston office. A negotiation was commenced and carried on personally by J. C. Short, president of the defendant company, with the Atchison, Topeka and Santa Fé Railroad Company in interviews, some of which occurred at the office of the latter company in Boston. At some of these the plaintiff was present, at others not. At one of these interviews, on June 10, 1880, at which the plaintiff was not present, a preliminary agreement or memorandum between the parties was entered into, signed by the president of the Atchison, Topeka and Santa Fé Railroad Company, the president of the Kansas City, Burlington and Santa Fé Railway Company, and Short, as president of the defendant company. This memorandum contemplated the purchase by the Atchison, Topeka and Santa Fé Railroad Company of the railroad of the Kansas City, Burlington and Santa Fé Railway Company, and, as a means of accomplishing that, the purchase of the mortgage bonds of the latter company, with a view to a foreclosure of the mortgage and the reorganization of the company. This memorandum was supplemented by a subsequent agreement entered into on the 13th of June, 1880, to which the parties were the Atchison, Topeka and Santa Fé Railroad Company, the New York, New England and Western Investment Company, Alden Speare, Charles S. Tuckerman, and Lucien M. Sargent, the three last named to act as trustees to hold the bonds to be used in consummating the purchase. The object of this contract was to provide and declare the modes by which the property of the Kansas City, Burlington and Santa Fé Railway Company should be sold and delivered to the Atchison, Topeka and Santa Fé Railroad Company, free from incumbrance, and contemplated the foreclosure and sale of the road for that purpose. The transaction was completed in accordance with the terms of the contract. It resulted in a gross profit to the

New York, New England and Western Investment Company, as is alleged by the plaintiff in his declaration, of $117,833.33, of which the plaintiff claims to be entitled to recover one-third, on the ground that the business originated and was transacted and said contract was made in said Eastern Division or Boston office, and that the plaintiff himself procured, or was instrumental in procuring and carrying out, the same.

The cause was tried by a jury, when, at the close of the plaintiff's evidence, the defendant asked the court to instruct the jury to render a verdict for the defendant, which was done, and a verdict rendered accordingly, and judgment thereon, to reverse which this writ of error is prosecuted.

The error assigned is in the ruling of the court in this instruction to the jury. The principal question, in our view of the case, is one of fact; it is whether, within the meaning of the contract between the parties, made December 17, 1879, the business in question, out of which these profits arose, originated in the Eastern Division, as therein described, or was transacted at the Boston office.

Upon a careful review of the entire evidence, giving to the plaintiff the benefit of all inferences which might reasonably have been drawn by the jury, we are of the opinion that the court below did not err in instructing the jury to find a verdict for the defendant. In our opinion, it clearly appears from the evidence, in which there was no conflict, that the business did not originate in the Eastern Division, and was not transacted at the Boston office. It would serve no useful purpose to go into any detail of the testimony, which, we think, admits of no different conclusion.

The plaintiff's declaration, in addition to counting on the special contract in writing, contained also common counts for work and labor done and services performed in and about the negotiation of the contract for the sale of the Kansas City, Burlington and Santa Fé Railway, under which a recovery might have been had, in the absence of a special contract, for the reasonable value of services as a broker, if any such had been performed; but in the present case no such recovery could be had, because it clearly appeared that whatever was

done by the plaintiff in that behalf was done under the special written contract, and not upon any implied contract for compensation.

*The judgment is accordingly affirmed.*